IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| VERA L. HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:10-cv-00061 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Jackson L. Kiser |
| Commissioner of Social Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Before me is the Report and Recommendation of the United States Magistrate Judge recommending that the Defendant's Motion for Summary Judgment be granted and the Commissioner's final decision be affirmed. The Plaintiff filed objections to the Magistrate's Report and Recommendation, and the Commissioner responded. I have reviewed the Magistrate Judge's recommendation, Plaintiff's objections, and relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I will **ADOPT** the Magistrate's Report and Recommendation and **GRANT** the Defendant's Motion for Summary Judgment. I **AFFIRM** the Commissioner's final decision and **DISMISS** this case from the docket of this Court.

I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

On April 2, 2007, Plaintiff Vera J. Harrison ("Plaintiff") filed concurrent applications for Social Security Disability benefits ("SSD") and Supplemental Security Income benefits ("SSI") pursuant to Title II and Title XVI of the Social Security Act respectively. *See* 42 U.S.C. §§ 401–433, 1381–1383f. In her initial questionnaires, Plaintiff alleged that as of July 15, 2006, she was under a disability due to the combined effects of chronic obstructive pulmonary disease ("COPD"), asthma, emphysema, arthritis of the neck and spine, heart problems, and low blood

1

pressure. (R. 177.) She further stated that as a result of such disability, she could not "bend over due to back problems," could not "lift or carry anything over 18 lbs.," had "problems concentrating and remembering instructions," and had "problems breathing" and "very low blood pressure." (*Id.*) Plaintiff's initial application (R. 93–98) and Request for Reconsideration were denied (R. 102–04). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 108–12.)

On June 16, 2009, an ALJ held an administrative hearing to determine whether Plaintiff was under a disability within the meaning of the Social Security Act. Plaintiff, represented by counsel, and Bonnie S. Martindale, an impartial vocational expert, both appeared and testified. (R. 43–88.) On December 3, 2009, the ALJ submitted his findings. (R. 13–22.) The ALJ applied the five-step evaluation process as set forth in 20 CFR §§ 404.1520(a) and 416.920(a). As an initial matter, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2006. He went on to find that Plaintiff suffered from the following severe impairments: "COPD (but still smokes), degenerative disc disease, and osteoarthritis." (R. 18). The ALJ found that these impairments neither met nor medically equaled any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (R. 28). Based on the evidence, he determined that Plaintiff retained "the residual functional capacity to perform light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour work day) . . . that involves no climbing stairs or ramps, balancing, stooping, kneeling, crouching and crawling and that avoids concentrated exposure to respiratory irritants (such as fumes odors, dust, gases, and poor ventilation) and workplace hazards (such as moving machine parts)." (R. 29). The ALJ concluded that this residual functional capacity allowed Plaintiff to perform her past relevant work as a bus driver

and housekeeper and, therefore, she was not disabled under the Act. (R. 36).

On January 15, 2010, Plaintiff filed a request for review of the ALJ's decision with the Appeal's Council. (R. at 10–11.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the ALJ's decision as the final decision of the Commissioner. (R. 1). Following the Appeals Council's decision, Plaintiff instituted the present civil action in this Court. (Complaint, Nov. 11, 2010, ECF No. 1). Thereafter, I referred this matter to Magistrate Judge B. Waugh Crigler for consideration of Plaintiff's and Commissioner's cross Motions for Summary Judgment. (Order, May 23, 2011, ECF No. 10). On August 11, 2011, Judge Crigler issued his Report and Recommendations in which he concluded that this Court should grant the Commissioner's Motion for Summary Judgment, affirm the Commissioner's final decision, and dismiss this matter from the docket. (Report and Recommendations, August 11, 2011, ECF No. 18). Plaintiff timely filed her objection to the Report and Recommendations (Objection, August 25, 2011, ECF No. 19), and the Commissioner timely responded. (Response, August 30, 2011, ECF No. 20.) Plaintiff makes the following objections to the Magistrate Judge's Report and Recommendations: (1) the ALJ failed to properly evaluate the medical opinions; (2) the ALJ failed to properly evaluate Plaintiff's credibility; (3) and the ALJ relied on flawed vocational expert testimony. (Objection, August 25, 2011, ECF No. 19).

## II.     STANDARD OF REVIEW

Congress has limited the judicial review that I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. *See* 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.

1996).  The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

      The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant.  20 C.F.R. §§ 404.1527–404.1545; *see Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) (noting that the role of the ALJ, not the VE, is to determine disability).  The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence.  20 C.F.R. §§ 404.1527, 416.927.  Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. *See id.* §§ 404.1527(e), 416.927(e); *see also Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision.  *Laws*, 368 F.2d at 642.  In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[1]"  *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589).

### III.  DISCUSSION

      As stated above, Plaintiff states three overarching objections to the ALJ's decision: (1) that the ALJ failed to properly evaluate the medical opinions; (2) that the ALJ failed to properly evaluate Plaintiff's credibility; (3) and that the ALJ relied on flawed vocational expert testimony.

---

[1] Or the secretary's designate, the ALJ.  *See Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

(Objection, August 25, 2011, ECF No. 19).  I shall consider each of these objections in turn.

    A.  <u>The ALJ's Evaluation of the Medical Evidence</u>

Plaintiff argues that the ALJ erroneously evaluated the medical evidence in various respects.  First, Plaintiff contends that the ALJ wrongly discounted the opinions of Plaintiff's treating physician, Dr. James M. Isernia, M.D.  Specifically, she argues that the ALJ wrongly determined that Dr. Isernia's opinions were entitled to less weight because he had assumed an "advocacy role" for Plaintiff and his opinion was not supported by objective medical evidence. In evaluating medical opinions, the ALJ should consider the following non-exclusive factors: "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)).  Courts "typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (internal quotations omitted).  Nevertheless, the treating physician's opinion is entitled to significantly less weight if it proves inconsistent with the objective evidence or other substantial evidence in the record.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 404.1527(d)(2)); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).  In addition, courts may be wary of treating physicians who assume an advocacy role for their patients.  *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

I find that substantial evidence in the record does not support the dire conclusions reached by Dr. Isernia.  In the Multiple Impairment Questionnaire, Dr. Isernia diagnosed

Plaintiff as suffering from degenerative disc disease, COPD, fibromyalgia, chronic pain syndrome, chronic back pain, severe osteoarthritis, vasovagal syncope, and various psychological problems. (R. 460–62.) He opined that she could sit or stand/walk for zero hours in a normal competitive five-day workweek environment and could never lift or carry zero to five pounds. (R. 462–63.) He noted that it is "[d]ifficult for pt [sic] to walk at all due to dizziness, fall risk." (R. 462.) He further opined that she was incapable of "[g]rasping, turning, or twisting objects" or performing even low stress work. (R. 463, 465.) Moreover, he opined that these limitations applied as early as February 12, 2002. (R. 466.)

  The objective medical evidence in the record does not support Dr. Isernia's opinion. Plaintiff's chest and head CTs, King of Hearts monitor report, tilt table test, electrophysiology report, EEG report, and holter monitor study revealed no abnormalities. (R. 323, 329, 334–40, 351, 358, 380, 382, 398–99, 403–04.) Her pulmonary function tests and various chest exams consistently revealed only "mild airflow obstruction" and "no acute pulmonary disease." (R. 227–28, 378–79, 385, 404–05, 432, 435.) MRIs of Plaintiff's lumbar, cervical, and thoracic spine showed mild degenerative disc disease but no "neural impingement or acute abnormality." (R. 388, 400–01.) Despite Dr. Isernia's assertion that Plaintiff's disability began in 2002, his records of physical examinations during the relevant period reflect no severe problems or developments in Plaintiff's condition. (R. 238–245, 448–456.) Dr. Nadeau, to whom Dr. Isernia referred Plaintiff for additional cardiovascular examination, consistently noted normal cardiovascular findings. (R. 325–26, 332–33, 344–45, 351–53.) Further examinations by consultative examiners Dr. Mark Stowe and Dr. Bruce Mazurek likewise revealed only mild pulmonary impairment and lower back pain (R. 263–69, 428–41). Dr. Mazurek and the State agency record reviewing physicians, Dr. Robert McGuffin and Dr. Thomas Phillips, all opined

that Plaintiff's residual functional capacity allowed her to perform a range of light work, including lifting up to twenty pounds and working up to six hours in an eight-hour work day. (R. 272–78, 297–303, 430.)  I find that these medical findings and opinions constitute substantial evidence upon which the ALJ could have made his determination.

In addition, certain non-medical evidence weighs against Dr. Isernia's opinion. Plaintiff's own statements cast significant doubt on many of Dr. Isernia's conclusions.  Plaintiff has stated that she is capable of performing a variety of daily activities, such as doing laundry, cleaning her house, walking and caring for her dog, and going shopping.  (R. 158–165.) Performance of such activities is inconsistent with the severely debilitating conditions described by Dr. Isernia.  Although Dr. Isernia opined that Plaintiff's disability applied as early as 2002, Plaintiff continued to work until July 15, 2006 and herself stated that the pain did not commence until 2006.  (R. 177, 189.)  Although Dr. Isernia opined that Plaintiff could never lift or carry zero to five pounds, Plaintiff herself has stated that she can lift or carry up to eighteen pounds. (R. 177.)  In addition, the record contains evidence from which the ALJ could have reasonably concluded that Dr. Isernia had assumed the role of an advocate for Plaintiff and, thereby, lost significant credibility.[2]  In sum, I find that the record contains substantial evidence on which basis the ALJ could have accorded Dr. Isernia's opinion less weight.

Next, Plaintiff argues that the ALJ wrongly rejected Dr. Stowe's opinion in favor of Dr. Mazurek's.  "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citing *Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996)).  Accordingly, "[t]he ALJ may reject the

---

[2] For instance, Dr. Isernia's record of Plaintiff's physical examination on October 3, 2005 contains the notation, "I think I'll have Dr. Isernia put me on disability."  Subsequently, Dr. Isernia's record of Plaintiff's physical examination on March 28, 2007 contains the notation "Start Disability Process."  Taken together, these notations support the inference that "'the patient's regular physician may want to do a favor for a friend and client.'" *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (quoting *Stephens v. Heckler*, 766 F.2d 284 (7th 1985)).

7

conclusions of any medical expert, whether hired by the claimant or the government if they are inconsistent with the record as a whole." *Id.* (citing *Bentley v. Shalala*, 52 F.3d 784, 786 (8th 1995)). I find that the record as whole contains substantial medical evidence upon which the ALJ could have concluded that Dr. Mazurek's opinion was entitled to greater weight. Dr. Stowe diagnosed Plaintiff with COPD, lower back pain with left-sided sciatica, chest pain, high blood pressure, and borderline diabetes. (R. 266.) He opined that Plaintiff was able to sit for two hours and stand for one hour in a work day, frequently carry ten pounds and occasionally twenty, and occasionally bend, stoop, and crouch. (*Id.*) He further found that Plaintiff would have environmental limitations secondary to heights. (*Id.*) Dr. Mazurek noted that most of Plaintiff's symptoms were "subjective in nature," that her COPD was clinically stable, and that "most of her pain was with range of motion." (R. 430.) Based on this assessment, he concluded that Plaintiff would have difficulty lifting more than twenty pounds or climbing stairs but found no further limitations. (*Id.*) The ALJ could have determined that Dr. Mazurek's opinion was entitled to greater weight because it was more consistent with the objective testing and examinations, Plaintiff's longitudinal symptoms, and her self-reported range of activity as set forth above.[3]

  Finally, Plaintiff argues that the opinions from the non-examining physicians, Dr. McGuffin and Dr. Phillips, do not constitute substantial evidence. Although it is true that "'a

---

[3] Plaintiff makes much of the fact that Dr. Stowe reviewed Plaintiff's treatment records while Dr. Mazurek apparently did not. The record indicates that Dr. Stowe relied on "[t]he claimant and old medical records" as sources of Plaintiff's medical history. (R. 263.) Dr. Mazurek fails to identify any sources of Plaintiff's medical history relied on in reaching his opinion. (R. 428.) Nevertheless, both reports appear to contain similar and thorough medical histories. (R. 263–67,428 –30.) Moreover, both physicians appear to base their diagnoses and opinions primarily on physical examinations and information provided by Plaintiff as opposed to Plaintiff's past treatment records. Accordingly, even if Dr. Mazurek did not review Plaintiff's treatment records, it seems unlikely that this fact had any great bearing on his opinion. Plaintiff also points out that Dr. Mazurek acknowledged that his opinion was limited by his inability to verify the severity of her condition against imaging studies. Plaintiff seemingly attributes this concession to the following statement: "Certainly any clinical correlation with her x-rays will certainly help with further verification of her chronic neck and back pain." (R. 430.) Even if this statement is interpreted as the rather broad concession urged by Plaintiff, the ALJ could have concluded that the various imaging studies and other tests contained in the record were in fact consistent with Dr. Mazurek's ultimate conclusions.

non-examining physician's opinion cannot, by itself, serve as substantial evidence . . . when it is contradicted by *all of the other* evidence in the record,'" the ALJ can rely on a non-examining physician's opinion "when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 34–46 (4th Cir. 1986) (quoting *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905 (4th Cir. 1974)).  Moreover, "if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Id.* at 346 (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)).  Here, I find that the non-examining physicians' opinions were consistent with the record as a whole.  Moreover, because the opinions of the examining physicians conflict in this case, the ALJ's decision to accept the non-examining physicians' opinions should stand provided they based their opinions on detailed information from an examining source. *See id.* at 347–48.  Dr. McGuffin and Dr. Phillips based their opinions on the detailed information contained in Dr. Stowe's report.  (R. 277, 302.)  Accordingly, I find that the non-examining phsyicians' opinions provided substantial evidence on which the ALJ could have based his decision.

    B.   The ALJ's Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility with respect to the severity of her physical impairments.  Fourth Circuit precedent and the applicable regulations set forth a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms: (1) "there must be objective medical evidence showing 'the existence of a medical impairment(s) . . . which could reasonably produce the pain or other symptoms alleged," *Craig v. Chater*, 76 F.3d 585, 594 (quoting 20 C.F.R. §§ 416.929(a) and 404.1529(a)); and (2) "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(1) and 404.1529(c)(1)).

9

The second prong of the test should consider "not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings . . . any objective medical evidence of pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.* (citing 20 C.F.R. §§ 416.929(c)(1)–(3) and 404.1529(c)(1)–(3)).  In addition, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776, 788–89 (E.D. Va. 1976)).

The ALJ found that Plaintiff's medical impairments could reasonably produce the symptoms alleged.  (R. 31.)  He went on to find, however, that Plaintiff's statements as to the intensity and persistence of these symptoms was not entirely credible and generally inconsistent with the record as a whole.  (*Id.*)  I find that the record contains substantial evidence upon which the ALJ could have reached this conclusion.  At the hearing, Plaintiff testified to experiencing the following symptoms: passing out once to twice per week for no apparent reason; constant back pain so intense that she is unable to get out of bed as often as once per week; neck pain brought about by turning her head; severe headaches on a daily basis; recurrent hip pain once to twice per week; shortness of breath brought about by walking as little as fifteen to twenty feet; constant leg pain; episodic crying and hallucinations; panic and hyperventilation when around groups of people; and anxiety causing tightness in the chest and throat constriction.  (R. 54–60, 196–97.)  She testified that she is unable to sit for more than ten to fifteen minutes without getting up.  (R. 60.)  She also testified that she can stand for up to fifteen minutes before having

10

to sit down and usually must lean against something for support. (*Id.*) The ALJ could have found, however, that the record as whole did not support the alleged intensity and persistence of Plaintiff's symptoms.

As already discussed in the previous section, the results of Plaintiff's numerous diagnostic tests proved largely unremarkable. (R. 323, 329, 334–40, 351, 358, 380, 382, 398–99, 403–04.) Her pulmonary function tests and various chest exams consistently showed "mild airflow obstruction;" however, such a diagnosis is hardly consistent with the severe breathing impairment described by Plaintiff. (R. 227–28, 378–79, 385, 404–05, 432, 435.) MRIs of Plaintiff's spine showed mild degenerative disc disease but no "acute abnormality." (R. 388, 400–01.) Again, such a mild diagnosis is inconsistent with the debilitating back pain described by Plaintiff. Plaintiff's treatment records reveal fairly normal and uneventful physical examinations. (R. 238–245, 448–456.) In addition, the treatment received by Plaintiff appears fairly conservative.[4] She has not had any surgeries, nor has she been referred to any specialists other than Dr. Nadeau. She has not had any recent treatment from an orthopedic specialist. (R. 69.) She has not been treated by a mental health specialist despite claims of experiencing severe depression and hallucinations.

In addition, Plaintiff's own account of her daily activities casts doubt on the alleged severity and persistence of her symptoms. At the hearing, Plaintiff testified that she is able to perform household chores such as hand washing dishes, vacuuming her house, and caring for her dog. (R. 61, 63.) She also testified that she is able to dress and bathe herself, frequently plays with her grandchildren, and cared for her boyfriend during his illness. (R. 62, 70–71.) In her initial questionnaire, Plaintiff stated that she is capable of doing laundry, dusting, sweeping,

---

[4] Plaintiff has suggested that the conservative and limited nature of her treatment was due to lack of adequate funding as opposed to the mild nature of her impairments. The thorough battery of tests to which Plaintiff submitted, however, seems to cast substantial doubt on this assertion.

11

walking her dog, and preparing meals on a daily basis. (R. 158–165.) In sum, the record contains substantial evidence from which the ALJ could have concluded that Plaintiff's testimony as to the intensity and persistence of her symptoms and their affect on her ability to work was not credible.[5]

### C. The ALJ's Reliance on Vocational Expert Testimony

Plaintiff contends that the ALJ posed a hypothetical question to the vocational expert, Bonnie S. Martindale, that failed to set forth the effects of all of her impairments. "'[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.'" *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). To form a valid opinion, the vocational expert must assume as true the ALJ's determination as to the claimant's residual functional capacity. *See id.* Accordingly, if the ALJ's determination as to the claimant's residual functional capacity is erroneous, then so is the vocational expert's opinion. *See id.*

Plaintiff essentially argues that the ALJ's hypothetical question did not fairly set forth her residual functional capacity. The ALJ posed a hypothetical question that essentially incorporated Plaintiff's residual functional capacity as determined by Dr. Mazurek and the two non-examining physicians. (R. 81–82.) For the reasons set forth in the preceding sections, I find that this determination as to Plaintiff's residual functional capacity was supported by substantial evidence. Therefore, the ALJ properly relied on the vocational expert's determination that Plaintiff could perform light work comparable to her past experience as a housekeeper or bus

---

[5] To the extent that the ALJ engaged in "sit and squirm" jurisprudence by noting that Plaintiff was able to sit for more than an hour during the hearing, I agree with Magistrate Judge Crigler that such evidence standing alone would have been insufficient to sustain the ALJ's finding. *See Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990); *Lewis v. Bowen*, 813, 816 (4th Cir. 1987). Nevertheless, I find that substantial evidence independent of this "sit and squirm" observation supports the ALJ's conclusion.

driver. (R. 82–84).

## IV. <u>CONCLUSION</u>

As the standard of review requires, I am precluded from judging the evidence in this case in the way a finder of fact would, and instead must review the record before this Court and determine whether substantial evidence supports the decision of the Commissioner. For the reasons given here, I find that substantial evidence supports the ALJ's decision. Therefore, I will **ADOPT** the Magistrate Judge's Report and Recommendation and **DENY** the Plaintiff's objections. I will **GRANT** the Defendant's Motion for Summary Judgment and **AFFIRM** the Commissioner's final decision. This case shall be **DISMISSED** from the active docket of this Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Magistrate Judge Crigler.

Entered this 12th day of September, 2011.

s/Jackson L. Kiser<br>
Senior United States District Judge